UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. CR219-008 |
| | ) | |
| WARREN SINEPHA, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM**

The Court will sentence Warren Sinepha on January 21, 2020, an endeavor that requires it to consider the well-known sentencing factors of 18 U.S.C. §3553(a). Through reading the Presentence Investigation Report ("PSI") and other matters of record, the Court knows about the events leading to Sinepha's arrest, his criminal history, and his background. This sentencing memorandum will discuss some of those things and bring other matters to the Court's attention.

Sinepha, who is now 35 years old, was one of five children born in poor conditions in Miami. Sinepha describes a childhood in dangerous neighborhoods, where he witnessed numerous crimes; relays that he had seen his friends getting shot and stabbed; and describes a situation where

1

he went to meet up with a friend, only to find that the friend had been recently shot and killed.

His father, who was Haitian, worked a number of jobs to provide for his family; Sinepha particularly remembers his father's work as a dishwasher, which allowed him to bring home food to the family. His father died from gunshot wounds when Sinepha was 7 years old. His mother continued to raise the five children until she was diagnosed with brain cancer in 1999, when Sinepha was only 15. Prior to her diagnosis, Sinepha worked hard to bring home good grades and Principal's Awards; he remembers that his mother would hang up his awards and show them to everyone who visited the house. While his mother was alive and well, Sinepha secured placement to a marine biology magnet school, and he told counsel that he discovered he had a shellfish allergy during a lecture about bioluminescence.

But after his mother's illness and eventual death, Sinepha and his four siblings went to live with his grandparents. His grandparents lived across town, making transportation to the magnet school especially difficult. Worried about the financial burden of five children on his grandparents, Sinepha tried to make money to help them keep the lights

2

on and the water running by doing odd jobs and picking sellable materials out of junkyard scraps. His mother's death made him lose motivation to study. His grades plummeted. He eventually dropped out of high school.

The PSI and a second report available to the Court describe the emotional and psychiatric fallout from Sinepha's youth. There have been suicidal ideations. He suffers from recurrent nightmares about traumatic events. He has long-standing personality and depressive disorders that have resulted in deep-seated personality traits (like lack of trust in others and a need for social isolation) that may prove resistant to therapeutic interventions. But there is a suggestion that therapy and the occasional use of anti-depressants may help.

But through all of this, Sinepha has worked to stay employed. His favorite job was from 2003 to 2005 as a security officer on fraternity row at the University of Miami, an employer that offered a number of educational and advancement opportunities. Unfortunately, the mother of his daughters did not like Miami, so they moved. Sinepha has worked warehouse jobs, including as a forklift operator; his favorite one of these jobs was when he was the only worker in the area and received a lot of

responsibility and autonomy. Unfortunately he struggles with trust issues and interpersonal relationships in his employment. The PSI's recommendation for mental health treatment is most appreciated.

A constant in Sinepha's life is his four daughters, who range in age from 8 to 15 years old and whose mother is Felicia Martin. Only one of the girls – the 13 year-old – is his biological daughter. Sinepha lights up when he speaks of his girls, and while his romantic relationship with Martin ended in 2013, they still work together in rearing the children. Sinepha has taken them to doctors' appointments and school and put ponytails in their hair. As Sinepha told counsel, "Everything I do is for them." When he has money on the books, he calls them from jail.

Counsel spoke with Felicia Martin on January 13, 2020, to confirm Sinepha's account of his role in his daughters' lives. When counsel said, "I understand that he treats the girls like his own," Martin replied, "No – they are his own." Martin stressed Sinepha's helpfulness to and love for his daughters, and his daughters' love for him. She stated that when she has moved to other states, he has followed to help with the children. She confirmed, too, that they have put aside their differences to raise their daughters.

This crime occurred on May 25, 2018, when Sinepha, who was driving from Pennsylvania to Florida, ran out of money and gas. He tried to find work but could not. He slept in his car in a parking lot. Panhandling at a gas station yielded a single dollar. He then wrote a demand note and presented it to a teller at the Marshland Credit Union, who gave him $1,992 in cash and alerted the police. While this undoubtedly was a bank robbery for which Sinepha has accepted full responsibility, there are several facts about this crime adduced at Sinepha's guilty plea hearing that demonstrate why this was a bank robbery by intimidation, not by force and violence:

1. Sinepha stood in line at the bank and waited his turn.

2. He did not wear gloves or a mask.

3. He did not speak to the teller.

4. Although the note stated that he was armed, Sinepha did not pretend to have a weapon by making a "finger gun".

5. Sinepha held out a manila envelope for the teller to put the money in, thus exposing both hands.

6. Officers apprehended Sinepha (who was wearing the same clothing) shortly after the robbery. Sinepha confessed to the officers; he said that he did it and that the money was in a bag in the car. The officers then recovered $1,952; the missing $40 had been spent at a gas station.

7. Sinepha asked several GCSO deputies to apologize to the teller on his behalf.

The bank robbery occurred nearly 20 months ago, and since his arrest on May 25, 2018, Sinepha has been continuously incarcerated in the Glynn County Detention Center except for a brief stint in federal custody. His trust issues have resulted in his confinement in segregated housing. While undersigned counsel (his third CJA attorney) did not represent Sinepha at his February 21, 2019, initial appearance in this Court, the AUSA has informed her that Sinepha expressed his culpability on the record at that hearing and indicated that he wished to plead guilty. Sinepha's statements at the initial appearance, his immediate confession at the time of his arrest, his request to officers to apologize to the teller on his behalf, and his eventual guilty plea demonstrate that he is genuinely remorseful for what he has done. In facing sentencing,

Sinepha's primary concern has been whether the bank teller will be present at the hearing so that he can personally apologize to her.

Sinepha faces an advisory guidelines range of 33 to 41 months. The PSI recommends a sentence of 41 months' imprisonment based on several factors, to wit: 1) that "an argument could be made that the two-level threat of death enhancement should apply, which would raise the guideline range to 41 to 51 months"; 2) that "defendant's prior criminal history is comprised of four prior theft convictions and one dropped domestic battery"; and 3) that defendant "has a pending charge in Harrisburg, Pennsylvania" for a demand note bank robbery and used a "portion of those funds . . . to purchase the vehicle [he] was driving during the instant offense." Sinepha respectfully disagrees with this analysis.

First, a recent Eleventh Circuit case, *United States v. Davis*, 943 F.3d 1329, 1337 (11th Cir. 2019), discusses the two-level threat of death enhancement, emphasizing that the bank robbery guideline (§2B3.1) "is designed to distinguish between bank robberies involving threats of harm and those relying on threats of death." *All* bank robberies "employ threats of some kind of harm, or they would not satisfy the statutory requirement that the defendant used 'force and violence' or

7

'intimidation.'" *Id.* To constitute a general threat of harm into a threat of death, there must be "something more." *Id.* at 1335. In finding that there was not "something more" in *Perez*, the Court noted that Perez did not wear a disguise, that his clothes did not independently suggest a hidden weapon, that Perez made no threatening gestures or nonverbal indications that he had a weapon, that he did not act menacingly, and that he did not aggressively demand the money. *Id.* This is the situation in Sinepha's case, which counsel was careful to establish at his guilty plea colloquy: Sinepha, unmasked and ungloved, patiently waited in line, handed the teller an envelope, did not speak to the teller, and made no threatening gestures or "finger guns." Neither the teller nor the bank has submitted a victim impact statement. [PSI ¶11] This case does not involve *Perez*'s "something more" – which is why no threat of death enhancement applied.

Second, the probation officer is correct that Sinepha has four prior theft convictions. The first three resulted from a single arrest in Pennsylvania on August 18, 2011; on October 24, 2011, Sinepha pleaded guilty to theft from a motor vehicle and received 20 days' confinement on each charge, to run concurrently. [PSI ¶27] These are the only details

about these convictions available in the PSI. The theft charges appear to be violations of 18 Pa. C.S.A. §3934(a), which provides as follows:

> A person commits the offense of theft from a motor vehicle if he unlawfully takes or attempts to take possession of, carries away or exercises unlawful control over any movable property of another from a motor vehicle with intent to deprive him thereof.

Absent recidivism issues, all theft by taking offenses under this code section are misdemeanors. *See* 18 Pa. C.S.A. §3934(b).

As described in ¶28, Sinepha's only other theft conviction involved a 2014 guilty plea in Florida to petty theft, with 11 days' confinement and $109.96 in restitution. *See* F.S.A. §812.014(2)(e) (describing petit theft in the first degree as involving stolen property valued at $100 or more but less than $750 and providing for misdemeanor punishment). The theft involved three video game controllers from Wal-Mart; Sinepha confessed that he did so to get one of his daughters a birthday gift. This represents the extent of Sinepha's prior convictions. As the probation officer notes, Sinepha was arrested for battery following a domestic dispute with Felicia Martin, but these charges were dropped less than two weeks after they were filed. [PSI ¶33]

Finally, as the sentencing recommendation notes, there is a demand note bank robbery charge in Pennsylvania. [PSI ¶32] The PSI lists that charge as "pending," meaning that that commonwealth may elect to prosecute Sinepha on that charge. Sinepha was fully forthcoming at his arrest on these charges about that matter. [PSI ¶9] And while Sinepha said he spent some of those funds on the Nissan Maxima that he was driving during this offense, the discovery indicates that he sent some of those funds to support his daughters. The Nissan Maxima itself was seized by local law enforcement, and counsel understands that it awaits forfeiture proceedings.

Sinepha has been extremely forthcoming and accepted his culpability for this crime immediately. He is genuinely remorseful. He has spent 20 months in special housing, mostly in the Glynn County Detention Center. Despite a terribly traumatic childhood, Sinepha has tried to remain employed and has cared for his four daughters. For these reasons and for the reasons to be argued by counsel at the upcoming sentencing hearing, Sinepha believes that a sentence of no more than 33 months' imprisonment is appropriate in this case.

Respectfully submitted this 17th day of January, 2020.

              ROUSE + COPELAND LLC

              /s/ Amy Lee Copeland
              Amy Lee Copeland
              Georgia Bar No. 186730
              Attorney for Defendant

602 Montgomery Street
Savannah, Georgia 31401
912.807.5000
ALC@roco.pro

## CERTIFICATE OF SERVICE

Today I have served the defendant's sentencing memorandum by electronically filing it on the Court's CM/ECF portal, which generates a notice and a link to a file-stamped .pdf version of the filing distributed by email to all counsel of record.

This 17th day of January, 2020.

ROUSE + COPELAND LLC

/s/ Amy Lee Copeland
Amy Lee Copeland
Georgia Bar No. 186730
Attorney for Defendant

602 Montgomery Street
Savannah, Georgia 31401
912.807.5000
ALC@roco.pro